UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALVIN BUCHANAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00181-JPH-MJD |
| | ) |
| JEREMIAH PARDUE, et al. | ) |
| | ) |
| Defendants. | ) |

**Order Granting Plaintiff's Motion for Leave to Amend,
Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

Alvin Buchanan, an inmate currently incarcerated at Putnamville Correctional Facility, filed this civil rights action under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights while he was incarcerated at Correctional Industrial Facility ("CIF"). Specifically, he asserts a Fourteenth Amendment equal protection claim against Warden Wendy Knight and Hearing Officer Jeremiah Pardue and a First Amendment retaliation claim against Hope Greathouse.

The defendants seek summary judgment arguing that Mr. Buchanan failed to exhaust his available administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Mr. Buchanan filed a response in opposition to the motion for summary judgment, and the defendants replied. Mr. Buchanan thereafter filed a motion for leave to amend his response. Dkt. 42. The defendants have not opposed the motion for leave to amend, so it, dkt. [42], is **granted**. The Court will consider Mr. Buchanan's amended response, dkt. 42-1, in its consideration of the defendants' motion for summary judgment. For the reasons explained below, the defendants' motion for summary judgment is **granted**.

1

## I. Legal Standard

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary

judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II. Statement of Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Buchanan as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### A. Mr. Buchanan's Conduct Report, Disciplinary Proceeding Process, and Classification Appeals

Mr. Buchanan was found guilty of a conduct violation after a disciplinary hearing conducted by Hearing Officer Pardue on October 29, 2019. *See* dkt. 42-1 at 11. That same day, he appealed the results of the disciplinary hearing to Warden Knight alleging that the disciplinary proceeding should have been dismissed due to procedural errors. *Id.* Warden Knight reviewed the appeal and found "no new evidence or information that was not available at [the disciplinary] hearing," "no due process errors that would indicate the need for a dismissal," and no error by the disciplinary hearing officer. Dkt. 42-1 at 12. This was Mr. Buchanan's only level of appeal with respect to this disciplinary proceeding. *Id.*

On November 13, 2019, Mr. Buchanan submitted a request for interview asking why his disciplinary proceeding was not dismissed. Dkt. 42-1 at 9. He asked if he could file a grievance about this issue. *Id.* The response stated, "That case was never listed in OIS to be expunged. Your appeal (DHB) from 11/1/19 was denied." *Id.*

Mr. Buchanan filed a classification appeal on November 19, 2019, related to the decision that he could not move from the A housing unit at CIF because of his disciplinary proceeding. Dkt. 42-1 at 14. This appeal was denied. *Id.*

Mr. Buchanan filed a second classification appeal on December 17, 2019. Dkt. 42-1 at 13. In this appeal, he challenged the decision to suspend his contact visits and asked whether this was part of the punishment resulting from his disciplinary proceeding. *Id.* This appeal was also denied. *Id.*

### B. CIF's Administrative Remedy Process and Mr. Buchanan's Use Thereof

At all times relevant to the claims in this case, Mr. Buchanan was an inmate at CIF. Dkt. 16; *see also* dkt. 34-3 at ¶ 11. The Indiana Department of Correction ("IDOC") has an Offender Grievance Process (hereinafter the "Grievance Process") which is intended to allow inmates to "resolve concerns and complaints related to their conditions of confinement." Dkt. 34-1 at 1. The Grievance Process identifies both matters that are appropriate and inappropriate for resolution through the Grievance Process. *Id.* at 3. As relevant to this action, inmates should use the Grievance Process to address "[t]he manner in which staff members interpret and apply the policies, procedures, or rules of [IDOC] or of the facility" and "[a]ctions of individual staff, contractors, or volunteers." *Id.* Inmates should not use the Grievance Process to address classification actions or decisions or disciplinary actions or decisions as there are separate appeal processes for those purposes. *Id.*

CIF uses the Grievance Process to address inmate complaints. Dkt. 34-2 at ¶ 5. Mr. Buchanan received information concerning the Grievance Process during the admissions and orientation process, and all offenders at CIF have access to the Grievance Process through the law library. *Id.* at ¶¶ 28–29.

The Grievance Process applicable at the time of the incidents underlying Mr. Buchanan's complaint consisted of three steps: (1) a formal attempt to solve a problem following unsuccessful attempts at informal resolution; (2) a written appeal to the Warden or the Warden's designee; and (3) a written appeal to the IDOC Grievance Manager. Dkt. 34-1 at 3; *see also* dkt. 34-3 at ¶ 17. Mr. Buchanan did not file any informal grievances, formal grievances, or appeals related to either his claim that Warden Knight and Hearing Officer Pardue discriminated against him during the disciplinary proceeding or his claim that Ms. Greathouse retaliated against him by filing the conduct report underlying the disciplinary proceeding. Dkt. 34-3 at ¶ 35; dkt. 34-4 at ¶ 9. Mr. Buchanan asserts that he did not file any grievances because he "mistakenly thought" that his complaints would be addressed through the classification appeal process and the disciplinary proceeding process. Dkt. 42-1 at 15; *see also* dkt. 42-1 at 5 (stating he "did not have knowledge that the issues raised at his Disciplinary Hearing were grievable issues").

### III. Discussion

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (footnote omitted). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Ross v. Blake*, 136 S. Ct. 1850, 1057–58 (2016) (explaining why "all inmates must now exhaust all available remedies" and concluding that "[e]xhaustion is no longer left to the discretion of the district court") (internal quotation marks and citation omitted). The Seventh Circuit applies "a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

While the PLRA has a strict exhaustion requirement, it also "contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858.

"[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* at 1858 (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted). It is the defendants' burden to establish that the administrative process was available to Mr. Buchanan. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

The defendants assert that Mr. Buchanan's claims are procedurally barred due to his failure to exhaust the administrative remedies available to him. Mr. Buchanan contends that he completed every step of the disciplinary proceeding appeal process and classification appeal process and "mistakenly thought" he exhausted his administrative remedies by doing so. *See* dkt. 42-1 at 5; dkt. 42-1 at 15.

### A. Retaliation Claim

Mr. Buchanan claims that Ms. Greathouse filed the conduct report underlying his disciplinary proceeding in retaliation for Mr. Buchanan's exercise of his First Amendment right to freedom of speech. *See* dkt. 15 at 2, 4.

The Grievance Process in place at CIF at the time of this alleged incident required an inmate to grieve "[a]ctions of individual staff, contractors, or volunteers." Dkt. 34-1 at 3. Mr. Buchanan's

6

retaliation claim against Ms. Greathouse thus falls within the types of issues that are subject to the Grievance Process. Per the Grievance Process, Mr. Buchanan should have filed grievances presenting this complaint even though he had completed the disciplinary proceeding process by appealing his conviction of a disciplinary violation.

This is especially true here because Mr. Buchanan did not reference Ms. Greathouse or challenge the facts underlying the disciplinary violation in his appeal of the disciplinary hearing. *See* dkt. 42-1 at 11. "The purpose of the exhaustion requirement is to ensure that prisons have a fair opportunity to correct their own errors through the grievance process," *Pyles v. Nwaobasi*, 829 F.3d 860, 867 (7th Cir. 2016), and Mr. Buchanan's failure to raise his allegations of retaliation through the Grievance Process deprived CIF of such an opportunity.

The Court understands Mr. Buchanan to also argue that the Grievance Process was unavailable to him because he did not know that this issue was subject to the Grievance Process and prison officials did not respond to his inquiry as to whether he needed to file a grievance. *See* dkt. 42-1 at 1, 5; *see also* dkt. 42-1 at 9. This argument is unpersuasive because the defendants have designated evidence that all inmates receive information concerning the Grievance Process during the admissions and orientation process and that the Grievance Process is available through the law library at CIF. Dkt. 34-3 at ¶¶ 28–29. Mr. Buchanan does not assert that he did not receive this information or that information about the Grievance Process was unavailable to him through the law library. Further, the Grievance Process is not so complicated that it is "essentially unknowable," and the Supreme Court has stated that an inmate "should err on the side of exhaustion" if a grievance process is "susceptible of multiple interpretations." *Ross*, 136 S. Ct. at 1859 (internal quotation marks and citation omitted). The undisputed evidence is that Mr. Buchanan had access to the Grievance Process but misunderstood its requirements. Under the

"strict compliance approach to exhaustion," *Dole*, 438 F.3d at 809, Mr. Buchanan's misunderstanding of the Grievance Process does not excuse his failure to exhaust.

Based on the foregoing, the defendants have met their burden of proving that Mr. Buchanan "had available [administrative] remedies that he did not utilize" to grieve his complaint that Ms. Greathouse retaliated against him in violation of the First Amendment. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). Consequently, the defendants' motion for summary judgment is **granted** with respect to this claim.

### B. Equal Protection Claim

Mr. Buchanan claims that Warden Knight and Hearing Officer Pardue discriminated against him in violation of the Fourteenth Amendment when they refused to dismiss his disciplinary proceeding due to procedural error. Dkt. 15 at 2–3. He alleges that Warden Knight and Hearing Officer Pardue dismissed disciplinary proceedings against other inmates for such procedural errors. *See* dkt. 16 at 2.

This claim was subject to the Grievance Process, and thus Mr. Buchanan was required to exhaust the administrative remedies available to him prior to filing this action. The Grievance Process at CIF identifies "[t]he manner in which staff members interpret and apply the policies, procedures, or rules of [IDOC or CIF]" as an issue subject to the Grievance Process. Dkt. 34-1 at 3. Mr. Buchanan's claim against Warden Knight and Hearing Officer Pardue falls in this category because he alleges that their failure to follow the IDOC policy that requires dismissal of disciplinary proceedings for procedural error amounted to discrimination in violation of the equal protection clause of the Fourteenth Amendment.

Mr. Buchanan's discrimination claim is different from the claim he presented in his disciplinary appeal—that the disciplinary proceeding should have been dismissed based on

procedural error. A claim of procedural error attacks the validity of the disciplinary proceeding and therefore is "non-grievable" under the Grievance Process because it relates to "[d]isciplinary actions or decisions." *See* dkt. 34-1 at 3. In contrast, Mr. Buchanan's discrimination claim against Warden Knight and Hearing Officer Pardue alleges that they refused to implement IDOC policy for improper reasons. The distinction between these two types of claims is determinative.

Mr. Buchanan's belief that he did not need to complete the Grievance Process with respect to his discrimination claim because he completed the disciplinary proceeding appeal process does not excuse his failure to exhaust. Even if his belief was a reasonable interpretation of the Grievance Process, he still should have erred on the side of exhaustion. *See Ross*, 136 S. Ct. at 1859 ("When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion."). The Grievance Process was not so unclear as to become "unknowable." *Id.* at 1859–60.

Additionally, Mr. Buchanan's assertions that he did not know he had to grieve his discrimination claim, that prison officials did not respond to his inquiry whether he needed to file a grievance, and that he was confused due to a response to an earlier grievance do not excuse his failure to exhaust. As explained above, the record contains undisputed evidence that Mr. Buchanan received information concerning the Grievance Process during the admissions and orientation process and that a copy of the Grievance Process was available through the law library at CIF. *See* dkt. 34-3 at ¶¶ 28–29. Mr. Buchanan therefore had access to the Grievance Process and could have determined whether he needed to file a grievance related to his discrimination claim. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."); *see also Manley v. Sevier*, 746 F. App'x 594, 596 (7th Cir. 2019) (finding inmate's argument that

9

he was confused by the administrative remedy process "unpersuasive" because he was a "seasoned grievance filer").

For the foregoing reasons, the defendants have met their burden of proving that Mr. Buchanan did not exhaust the administrative remedies available to him with respect to his discrimination claim against Warden Knight and Hearing Officer Pardue. The defendants' motion for summary judgment is **granted** with respect to this claim.

### IV. Conclusion

As explained above, the defendants have demonstrated that Mr. Buchanan failed to exhaust the administrative remedies available to him before filing this lawsuit. The consequence, in light of § 1997e(a), is that this action should not have been brought and must now by dismissed without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice").

The plaintiff's motion for leave to file amended response, dkt. [42], is **granted**. The defendants' motion for summary judgment, dkt. [34], is **granted**. This action is **dismissed without prejudice**. Final judgment shall now issue.

The plaintiff's motion requesting mediation, dkt. [44], is **denied as moot**.

**SO ORDERED.**

Date: 8/3/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ALVIN BUCHANAN
168597
PUTNAMVILLE – CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

J. Derek Atwood
INDIANA ATTORNEY GENERAL
derek.atwood@atg.in.gov

Archer Riddick Randall Rose
INDIANA ATTORNEY GENERAL
archer.rose@atg.in.gov